461 F.Supp. 1228 (1978)
In re Eugene MORRIS, Debtor.
WORTHEN BANK & TRUST COMPANY, N. A., Appellant,
v.
Eugene MORRIS and A. L. Tenney, Trustee, Appellees.
No. LR-76-122-B.
United States District Court, E. D. Arkansas, W. D.
December 28, 1978.
Isaac A. Scott, Jr. of Wright, Lindsey & Jennings, Little Rock, Ark., for appellant.
A. L. Tenney, Little Rock, Ark., for appellees.

OPINION
ARNOLD, District Judge.
Worthen Bank & Trust Company is a secured creditor of Eugene Morris, the debtor in this Chapter XIII proceeding. Morris bought two automobiles on conditional sale contracts, and the contracts were assigned to Worthen. The question presented is whether Worthen is entitled to an attorney's fee in accordance with the *1229 contracts. The Bank's attorney rendered substantial services, all in the Bankruptcy Court, in an effort to reclaim the cars and collect the debt, and these services are set forth in the record in detail. The services rendered by the attorney took place after this Chapter XIII proceeding was filed. The conditional-sales contracts contain the following clause:
If this contract after default is placed in the hands of an attorney for collection, the Buyer will pay the Holder of the contract a reasonable attorney's fee not exceeding 10% of the unpaid principal and interest, such payment to be secured by the security interest created under the contract.
The Bankruptcy Judge disallowed the fee, holding that Mechanics'-American Nat'l Bank v. Coleman, 204 F. 24 (8th Cir. 1913), is controlling. This Court disagrees. In that case an attorney's fee was disallowed, and the contractual provision relied on by the secured creditor was not materially different from the clause above quoted. The whole tenor of the opinion is hostile to the allowance of fees in this sort of situation, but a number of factors were present in Mechanics'-American, and relied on by the Court of Appeals in its opinion, that are not present here. For one thing, and perhaps most important, the opinion disregards the state law of contracts. Mechanics'-American was decided under the now abandoned regime of Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865 (1842). The Court of Appeals said: "The question here presented is one which falls within the domain of general or commercial law. It involves simply the construction and effect of recitals in negotiable instruments, and no question of right under the Constitution and statutes of a state. In such matters the decisions of the state court are not controlling in the federal tribunals." 204 F. at 28. In addition, no testimony was offered with respect to the value of the services of the attorney. The secured creditor simply claimed that the clause in the note was conclusive and that it should automatically be allowed ten per cent. of the debt as a fee. The attorney, according to the Court's opinion, did nothing that was not merely formal. He was never actually entrusted with the task of collecting or repossessing the collateral. Finally, the claim for attorney's fees was not filed until a year after the original claim of the secured creditor. The claim's "tardy assertion, practically a year after the adjudication, stamps it as an afterthought," the Court said. 204 F. at 32.
No one suggests that the stipulation in these conditional-sales contracts for attorney's fees is not a valid agreement under the law of Arkansas. And it has been clear at least since Security Mtge. Co. v. Powers, 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236 (1928) that the validity of such a lien and the construction of the contract creating it are questions of state law. In that case, Mr. Justice Brandeis, who later gave Swift v. Tyson the coup de grace in Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), held without qualification that local law governs these questions, thus destroying the chief underpinning of Mechanics'-American. The contract before the Supreme Court contained the following clause: "including ten percent as attorney's fees, if collected by law or through an attorney-at-law." No services had been rendered by the attorney before the adjudication of bankruptcy. The Court went on to say that the enforceability of the obligation to pay attorney's fees against the proceeds of the sale of the assets subject to lien was a question of federal bankruptcy law. The Court then held that the claim for attorney's fees could be enforced in bankruptcy, either as a provable claim or as a lien on specific property. The Court noted that under Sec. 63a of the Bankruptcy Act a contingent claim, that is, one not reduced to a sum certain, was not provable, but observed that the claim could nevertheless be allowed as a lien against the property sold, assuming that the proceeds of the sale were sufficient to pay both the principal debt and the fee. (The prohibition against proving contingent claims, incidentally, is no longer in the law. It was omitted when the Bankruptcy Act was overhauled in 1938.)
*1230 Does it matter that the services rendered here by the attorney were in a court of bankruptcy rather than the more usual suit for repossession, foreclosure, or debt? The language of the contract is certainly broad enough to cover the present situation. There has been a default, and the contract was placed in the hands of the Bank's attorneys for collection. That the collection efforts occurred after the debtor had instituted a wage-earner's proceeding under Chapter XIII is not material. To be sure, the parties to the contract probably did not contemplate that there would be a bankruptcy or a wage-earner's proceeding. As a matter of fact, in all likelihood they did not contemplate any kind of default. When parties sign a contract to buy a car, they have in mind paying for the car, not the opposite. Just the same, such clauses are included to cover the contingency of default, and the purpose of the clause, to indemnify the seller, or the assignee of the sales contract, against expenses of collection occasioned by default, is equally applicable whether the buyer has gone into a bankruptcy court or not.
It is true that In re Schindler, 223 F.Supp. 512 (E.D.Mo.1963), relied on by the Court below, looks the other way, but Schindler is based either on the law of Missouri or on Mechanics'-American, and in either event it is unavailing here. Schindler also cites First Savs. Bank & Trust Co. v. Stuppi, 2 F.2d 822 (8th Cir. 1924), a case arising in New Mexico and decided by our Court of Appeals before the creation of the Tenth Circuit. In Stuppi the claim was also denied, but the principal basis of the opinion was Sec. 63a of the Bankruptcy Act as it then existed, a provision that, as noted, is no longer in the law. Cf. the reference to Stuppi in Security Mtge. Co. v. Powers, supra, 278 U.S. at 175 n.5, 49 S.Ct. 84. Stuppi also holds that a contractual provision similar to that involved here does not of itself show an intent to include services in a court of bankruptcy, but that passage is based on the authority of Mechanics'-American, which, as we have seen, rests on the impermissible notion that federal law, not state law, governs the interpretation of this kind of contract.
The better view is to allow the attorney's fee, and this Court has done so in the past. In re Crowder, 301 F.Supp. 1102 (E.D.Ark. 1969). A similar result was reached in In re Mills City Plastics, 129 F.Supp. 86, 91-92 (D.Minn.1955), aff'd as to other issues, 226 F.2d 212 (8th Cir. 1955). The Court below suggested two possible grounds for distinguishing Crowder. First, as the opinion in that case expressly notes, the proceeds of the sale of collateral were sufficient to pay not only the principal debt but also the attorney's fee. The same was apparently true in Mills City Plastics and Security Mortgage. Here, by contrast, the Court below found as a fact that the value of the collateral is not sufficient to pay both the principal debt and the attorney's fees. This circumstance, in the opinion of this Court, does not defeat the claim. It simply means that the claim for fees, to the extent that the value of the collateral is insufficient to meet it, becomes an unsecured claim, rather than a secured one. Since 1938 this kind of claim has been provable, even though the services had not been rendered before bankruptcy, and even though their amount could not be ascertained at the time the bankruptcy proceeding was instituted. Next, it is argued that Crowder was a "straight bankruptcy" proceeding, while this case arises under Chapter XIII. That distinction, also, is rejected. Under 11 U.S.C. Sec. 1041, "where not inconsistent with the provisions of this chapter, the rights, duties and liabilities of creditors and of all other persons with respect to the property of the debtor shall be the same" under Chapter XIII "as if a decree of adjudication had been entered" in a straight bankruptcy proceeding "at the time the petition under this Chapter was filed . . .." No provision of Chapter XIII is inconsistent with this conclusion. The allowance of the fee, of course, adds to the debtor's burden, and therefore increases the risk that his plan will fail. The same may be said of any debt contracted by the wage-earner. This obligation, like the others he has incurred, was voluntarily and freely created as part of the *1231 consideration for the purchase of the two cars.
The better rule is summarized in 3A COLLIER, BANKRUPTCY, para. 63.15, at pp. 1853-54 (14th ed.rev. 1978) (footnotes omitted):
Hence, claims for stipulated attorney's fees should under the present act not be disallowed because bankruptcy intervened before the debt matured, or before the claim was put into the hands of an attorney, or before any legal services were rendered, provided  and this prerequisite is ever present  that the stipulation actually calls for the reimbursement of expenses for the particular legal services in question . . .. Unless the stipulation itself fails to contemplate the services rendered, it would seem that a claim should not be disallowed only because the otherwise meritorious services are rendered in the bankruptcy proceedings . . .. The creditor should not be deprived of his bargained-for right to lay the process of collecting in bankruptcy into the hands of a qualified agent.
This Court's decision in In re Crowder, among others, is cited in support of these propositions.
The Court below, having held that the claim for attorney's fees is absolutely barred, had no occasion to consider the amount of fees allowable. The ten per cent. stipulation is not automatic. Only a reasonable fee for services actually rendered should be allowed. A judgment will be entered reversing the Court below and remanding the cause for a determination of the amount of fees properly allowable and for such other proceedings, not inconsistent with this opinion, as may be just.
IT IS SO ORDERED this 27th day of December, 1978.

JUDGMENT
In accordance with the opinion entered herein, it is by the Court this 27th day of December, 1978, ORDERED
That the judgment of the Bankruptcy Court be, and it is hereby, reversed, and the cause remanded to that Court for a determination of the amount of attorney's fees properly allowable and for such further proceedings, if any, not inconsistent with this Court's opinion, as may be just.